UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John P. Dullea,

               Plaintiff,

     v.

Pension Benefit Guarantee Corporation,

               Defendant.

Court File No. 14-cv-5108 (JRT/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge upon Defendant's Motion to Dismiss or, in the alternative, Transfer Venue and Motion to Strike, [Docket No. 9], and Plaintiff's Motion to Stay Proceedings, [Docket No. 21]. On May 11, 2015, the Honorable John R. Tunheim, United States District Judge for the District of Minnesota, referred Defendant's motion to the undersigned United States Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (Order of Reference [Docket No. 22]). The Court held a motions hearing on May 13, 2015, and the Court took the parties' motions under advisement. For reasons discussed herein, the Court recommends **GRANTING in part** and **DENYING in part** Defendant's Motion to Dismiss or, in the alternative, Transfer Venue and Motion to Strike, [Docket No. 9]; and the Court **DENIES**, by order, Plaintiff's Motion to Stay Proceedings, [Docket No. 21].

## I.   BACKGROUND

On December 31, 2014, Plaintiff John P. Dullea ("Plaintiff"), *pro se*, initiated the present case against Defendant Pension Benefit Guarantee Corporation ("Defendant" or "PBGC"), seemingly challenging certain benefit determinations by PBGC. (Compl. [Docket No. 1]). Plaintiff allegedly brings the present case pursuant to the Employee Retirement Income Security

Act of 1974 ("ERISA"), the Retirement Equity Act of 1984 ("REA"), Minnesota Statutes Chapter 518, "Minnesota Marriage Dissolution," and the Pension Protection Act of 2006. (Id. ¶ 1). Plaintiff alleges that PBGC "failed in its administration of benefits in Qualified Domestic Relation Orders" and "is permitting incorrect benefit allocations." (Id.)

Plaintiff alleges that he and his wife divorced at some unidentified time in years past and that the resulting divorce decree did not clearly articulate the division of pension benefits, giving "plan administrators hesitation and care in dividing these assets between the plan participant and the alternate payee[.]" (Id. ¶¶ 5-6). Plaintiff alleges that PBGC "took over" the "Dullea Plan" on September 14, 2007. (Id. ¶ 9). Plaintiff petitions the Court for relief in the form of an order compelling PBGC to "qualify the instant Qualified Domestic Relations Order as modified and dated February 16, 2012." (Id. at 9). It appears that Plaintiff seeks review of PBGC's allegedly incorrect division pension benefits between Plaintiff and his ex-wife and/or PBGC's allegedly erroneous decision to "not qualify" a February 2012 domestic relations order.

## II.   DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE AND MOTION TO STRIKE, [DOCKET NO. 9]

PBGC moves the Court for an order dismissing Plaintiff's Complaint in its entirety for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). In the alternative, PBGC moves the Court for an order transferring the present case to the United States District Court for the District of Columbia. (See [Docket No. 9]).

Additionally, *in the event the Court does not dismiss Plaintiff's Complaint and does not transfer the present case to the United States District Court for the District of Columbia*, PBGC moves the Court for an order striking paragraphs 2 and 3 of the "Relief Requested" section of Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(f). PBGC affirmatively

states that in the event the Court transfers the present case to the District of Columbia, *that* court should rule on the Motion to Strike. (Def.'s Mem. [Docket No. 11], at n.1, 5).

### A.    Standards of Review

### 1.    Motion to Dismiss for Improper Venue

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a case for improper venue. Fed. R. Civ. P. 12(b)(3). "When moving to dismiss under Rule 12(b)(3), a defendant must demonstrate that the plaintiff's choice of venue is improper[.]" Webb Candy, Inc. v. Walmart Stores, Inc., No. 09-cv-2056 (PJS/JJK), 2010 WL 2301461, at *4 (D. Minn. June 7, 2010). Accordingly, Rule 12(b)(3) authorizes dismissal *only* when venue is "wrong" or "improper" in the forum in which the plaintiff initiated the case. Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 577 (2013).

When evaluating Rule 12(b)(3) motions to dismiss for improper venue, courts "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). "Rule 12(b)(3) permits the court to consider facts outside the pleadings and does not require the court to accept the pleadings as true." Multifeeder Tech., Inc. v. British Confectionery Co., No. 09-cv-1090 (JRT/AJB), 2009 WL 5033958, at *1 (D. Minn. Dec. 15, 2009).

### 2.    Motion to Transfer for Improper Venue

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in

3

> filing his case as to venue, whether the court in which it was filed
> had personal jurisdiction over the defendants or not. . . . When a
> lawsuit is filed, that filing shows a desire on the part of the plaintiff
> to begin his case and thereby toll whatever statutes of limitation
> would otherwise apply. The filing itself shows the proper diligence
> on the part of the plaintiff which such statutes of limitation were
> intended to insure. If by reason of the uncertainties of proper venue
> a mistake is made, Congress, by the enactment of § 1406(a),
> recognized that "the interest of justice" may require that the
> complaint not be dismissed but rather that it be transferred in order
> that the plaintiff not be penalized by . . . "time-consuming and
> justice-defeating technicalities." It would at least partially frustrate
> this enlightened congressional objective to import ambiguities into
> § 1406(a) which do not exist in the language Congress used to
> achieve the procedural reform it desired.

Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962) (footnote omitted) (as cited in Lyngholm

v. FedEx Ground Package Sys., Inc., 827 F. Supp. 2d 912, 918 (S.D. Iowa 2011)).

### 3.    Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that the Court "may strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

Civ. P. 12(f). "Because the rule is stated in the permissive, however, it has always been

understood that the district court enjoys 'liberal discretion' thereunder." Stanbury Law Firm v.

I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000) (citations omitted). However, despite the fact that the

Court enjoys broad discretion when determining whether to strike a pleading, courts employ

Rule 12(f) sparingly, as "striking a party's pleadings is an extreme measure" and "[m]otions to

strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." Id.

(citing Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (citations omitted)).

### 4.    *Pro Se* Pleadings

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused

from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

### B.    Analysis

PBGC represents that it is a wholly-owned United States government corporation that administers the pension plan termination insurance program Congress established under Title IV of ERISA. (Def.'s Mem. [Docket No. 11], at 1). "When a pension plan covered by Title IV terminates with insufficient assets to pay benefits under the plan, PBGC typically becomes statutory trustee of the plan and pays participants and beneficiaries their benefits in accordance with pension plan documents, and the legal limitations set forth in ERISA and PBGC's regulations." (Id. at 1-2). PBGC represents that in 2007, following termination of the Dullea Company, Inc.'s Defined Benefit Pension Plan (the "Plan"), PBGC became statutory trustee by agreement with the plan administrator. (Id. at 2).

Congress created PBGC under Title IV of ERISA. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. Pension Ben. Guar. Corp., 602 F. Supp. 2d 1115, 1116 (D. Minn. 2009) (citing 29 U.S.C. §§ 1301-1461). "The PBGC guarantees pension benefits to participants when pension plans terminate. The PBGC is based in Washington, D.C., and issues its benefit determinations and administrative appeals decisions therefrom." Id.

29 U.S.C. § 1303(f), governing PBGC, provides that:

> Except with respect to withdrawal liability disputes under part 1 of subtitle E of this subchapter, any person who is a plan sponsor, fiduciary, employer, contributing sponsor, member of a contributing sponsor's controlled group, participant, or beneficiary, and is adversely affected by any action of [PBGC] with respect to a plan in which such person has an interest, or who is an employee organization representing such a participant or beneficiary so adversely affected for purposes of collective bargaining with

> respect to such plan, may bring an action against [PBGC] for appropriate equitable relief in the **appropriate court**.

29 U.S.C. § 1303(f)(1) (emphasis added). "Appropriate court" refers to:

(A) the United States district court before which proceedings under section 1341 or 1342 of this title are being conducted,

(B) if no such proceedings are being conducted, the United States district court for the judicial district in which the plan has its principal office, or

(C) the United States District Court for the District of Columbia.

29 U.S.C. § 1303(f)(2). 29 U.S.C. § 1303(f) serves as "the *exclusive* means for bringing actions against [PBGC] under this subchapter, including actions against [PBGC] in its capacity as a trustee under section 1342 or 1349 of this title." 29 U.S.C. § 1303(f)(4) (emphasis added).

A plain-language reading of 29 U.S.C. § 1303(f) provides that "where there are no current proceedings under §§ 1341 or 1342, and the plan's principal office has closed, the statute compels venue in the District of Columbia." United Steel, 602 F. Supp. 2d at 1117. "[W]here the PBGC has assumed trusteeship, and a plan's principal office has closed, suits must be located in the District of Columbia." Id. at 1119.

The present record before the Court indicates that this is precisely the status of the present case: PBGC has assumed trusteeship, indicating that the Plan's principal office has closed, and, as a result, lawsuits against PBGC are only appropriately venued in the United States District Court for the District of Columbia. First, no proceedings pursuant to Section 1341 – governing termination of single-employer plans – or Section 1342 – governing termination of multiemployer plans – currently pend in this District; the subject Plan, according to representations by both parties and as corroborated by documents in the record, terminated no later than 2007. On September 14, 2007, PBGC wrote Plaintiff a letter stating that PBGC "is

now responsible for your pension plan." (Pl.'s Exhibits [Docket No. 17], at 152). Additionally, a December 28, 2012, letter from PBGC to Plaintiff stated that "the Dullea Plan terminated on January 31, 2002, and PBGC became trustee of the Plan on August 15, 2007." (Id. at 114, 116). Plaintiff recognized PBGC as the "Trustee of the Plan" in a November 28, 2014, letter, and a Norman County, Minnesota QDRO, dated August 6, 2008, also identified PBGC as trustee of the Dullea Co PP & Trust. (Id. at 142, 187). The Court is satisfied that the present record demonstrates that the subject Plan terminated, at the latest, in 2007, and that PBGC took over as trustee in September 2007. Accordingly, no termination proceedings remain on-going.

Additionally, although Plaintiff could not unequivocally confirm that PBGC took over the Plan in 2007 following the Plan's termination, or that the Plan no longer has a principal office, it would appear that because the Plan terminated in 2007, its principal office has necessarily closed – the Plan no longer operates, save via PBGC. Accordingly, venue is appropriate *only* in the United States District Court for the District of Columbia. See also Carstens v. Michigan Dep't of Treasury, 2009 WL 2581504, at *2 (W.D. Mich. Aug. 18, 2009) (holding that where there are no current proceedings under §§ 1341 or 1342, and the plan's principal office has closed, 29 U.S.C. § 1303(f) compels venue in the District of Columbia); Senick v. Pension Ben. Guar. Corp., 2014 WL 6891360, at *1 (E.D. Pa. Dec. 8, 2014) (holding that venue outside of the District of Columbia is unavailable when no pension plan termination proceedings pend and when the subject plan had already been terminated).

The Court notes that Plaintiff's citation to 29 U.S.C. § 1132(e)(1)[1] in his response memorandum is ultimately inapposite because (1) Plaintiff did not bring claims in state court, and (2) Section 1132 does not govern suits against PBGC.

---

[1]         Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this

The present case is appropriately venued in the United States District Court for the District of Columbia. The Court may either dismiss the present case pursuant to Rule 12(b)(3) or, as the interests of justice typically favor, transfer the case to the United States District Court for the District of Columbia. "Generally, transfer is favored over a dismissal because a transfer facilitates the adjudication of a dispute on the merits." Carstens, 2009 WL 2581504, at *2.

The Court recommends **DENYING** Defendant's motion to dismiss, in favor of **GRANTING** Defendant's motion to transfer the present case to the United States District Court for the District of Columbia, in the interests of justice.

Pursuant to Defendant's representations on the record at the May 13, 2015, hearing, the Court **DENIES** Defendant's Motion to Strike, in light of the fact that venue in this District is improper and that transfer is imminent.[2]

## III.    PLAINTIFF'S MOTION TO STAY PROCEEDINGS, [DOCKET NO. 21]

Plaintiff moves the Court for an order staying the present case, or at least the Court's consideration of Defendant's Motion to Dismiss or, in the alternative, Transfer Venue and Motion to Strike, [Docket No. 9], seemingly because Plaintiff is under the mistaken impression that PBGC has moved for dismissal of Plaintiff's claims *on their merits*. (See [Docket No. 21]). Plaintiff petitions the Court for the opportunity to conduct discovery. (Id.) However, as addressed above, the Court has not and cannot reach the merits of Plaintiff's claims; the Court

---

subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

29 U.S.C. § 1132(e)(1).
[2] Provided the Honorable John R. Tunheim, United States District Judge for the District of Minnesota, adopts the present Report and Recommendation.

recommends transferring the present case to the United States District Court for the District of Columbia, at which time Plaintiff will have the opportunity to continue to prosecute his claims.

The Court **DENIES** Plaintiff's Motion to Stay Proceedings, [Docket No. 21].

## IV.    CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

That Defendant's Motion to Dismiss or, in the alternative, Transfer Venue and Motion to Strike, [Docket No. 9], be **GRANTED in part** and **DENIED in part** as follows:

1.  Defendant's Motion to Dismiss be **DENIED**;

2.  Defendant's Motion to Transfer Venue be **GRANTED**; and

3.  Defendant's Motion to Strike be **DENIED as moot**.

**IT IS HEREBY ORDERED:**

That Plaintiff's Motion to Stay Proceedings, [Docket No. 21], is **DENIED**.

Dated: June 16, 2015                              s/Leo I. Brisbois
                                                  Leo I. Brisbois
                                                  U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within

14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.